# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                         )
                               )
   CYNTHIA GRAY,               )      Case No. 06-927
                               )
   Debtor.                     )      Chapter 11
                               )

## MEMORANDUM OPINION

Down East Community Hospital ("Down East") objects to confirmation of Dr. Gray's proposed Chapter 11 Plan of Reorganization on the grounds that Dr. Gray is not committing all of her projected disposable income to her Plan. Down East also seeks dismissal of Dr. Gray's bankruptcy case due to it allegedly being filed in bad faith.

For the reasons stated herein, the court will sustain Down East's objection to confirmation of the Debtor's proposed plan, but will not dismiss the Debtor's case.

## I. BACKGROUND

Dr. Gray, the Debtor, is a physician practicing in the area of obstetrics and gynecology. During the late 1990's, the Debtor maintained an independent medical practice in Pittsburgh, Pennsylvania. When she decided to close her independent practice and seek employment at a medical facility, the Debtor liquidated approximately $500,000 in retirement accounts to pay her business creditors. By doing so, the Debtor incurred about $200,000 in individual income tax liability, which is a precipitating cause of the Debtor's bankruptcy.

The Debtor obtained employment with Down East in Machias, Maine, and it loaned her over $100,000 to finance her move. Meanwhile, the Debtor put her Pittsburgh home on the market, but was unsuccessful in selling it. After moving to Maine and purchasing a home there, she had an employment dispute with Down East and she left her job.

The Debtor relocated to Weirton, West Virginia, and obtained employment at Weirton Hospital. Meanwhile, the Debtor was unable to sell her home in Maine, and the Debtor was also obligated to repay Down East the loan it gave her to finance her move to Maine.

The Debtor lives with a companion, Trudy Strupe, who accompanied her on her move from Pittsburgh, to Machias, and then to Weirton. The two have lived together for over twenty years, and the Debtor's Pittsburgh home was built to provide room enough for Ms. Strupe's parents to live with them. The Debtor testified that they lived as "one large family" during that time, with both the Debtor and Ms. Strupe contributing to the household expenses. For the past twelve months, however, Ms. Strupe has not contributed to the household expenses because she has had two major surgeries, and she suffers from severe arthritis. These ailments prevent her from working. Consequently, the Debtor pays for many of Ms. Strupe's household expenses, and medical bills.

## II. DISCUSSION

In her proposed Chapter 11 Plan, the Debtor states that she will make monthly plan payments of $4,500. Down East contends that the $4,500 monthly payment does not represent the Debtor's best efforts to repay her creditors on the grounds that the Debtor has budgeted for unreasonable and/or unnecessary expenses. Also, Down East contends that the Debtor's actions throughout her case demonstrate her bad faith, and Down East seeks dismissal of her case on that basis.

### A. Calculation of Disposable Income

As proposed, the Debtor's plan calls for monthly payments of $4,500 to be paid to a "representative" who will then distribute the funds in accordance with the Plan. Down East does not believe $4,500 represents the Debtor's best effort to repay her creditors.

Section 1129(a)(15) requires that "the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor . . . ." 11 U.S.C. § 1129(a)(15). Section 1129(a)(15)(B) references § 1325(b)(2) as providing the definition of "disposable income."

Under § 1325(b)(2), "disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended – (A)(i) for maintenance or support of the debtor or a dependant of the debtor . . . ." 11 U.S.C. § 1325(b)(2). A Debtor's "current monthly income" (CMI), is calculated pursuant to § 101(10A) of the Bankruptcy Code. In that section, Congress prescribed a six-month look back period to determine the CMI of a debtor before filing bankruptcy; the look back period ends on "the last day of the calendar month

immediately preceding the date of the commencement of the case . . . ."  11 U.S.C. § 101(10A)(A)(i).

Using Official Form 22B, the Debtor calculated her CMI as $18,830.35.  Having determined the Debtor's CMI, the next step in determining the Debtor's "disposable income" is to look to her reasonably necessary expenses.  §§ 1129(a)(15)(B); 1325(b)(2)(A).  The Debtor estimates her monthly payroll deductions on Schedule I at $8,962.55 and monthly expenses on Schedule J at $6,743.31.  Down East contends that the following expenses should be eliminated from the Debtor's budget as being unreasonable and/or unnecessary: (1) expenses to support Ms. Strupe; (2) expenses related to the care of 15 dogs; and (3) television and telecommunication expenses.

**1. Ms. Strupe**

The Debtor and Down East disagree on whether Ms. Strupe is a "dependent" of the Debtor, and whether expenses for her support are excludable from the Debtor's disposable income.

The term "dependent" is not defined in the Bankruptcy Code.  Although definitions exist in other federal statutes,[1] these definitions are not duplicated in § 1325, and, therefore, are not controlling.  *E.g., In re Bauer*, 309. B.R. 47, 51 (Bankr. D. Idaho. 2004) ("Congress did not in § 1325 establish the sort of express and detailed conditions for finding dependency as it did in [other statutes; therefore, the definition of dependent in § 1325 is] to be evaluated based on that term's commonly understood meaning.").

In determining who is a "dependent" under § 1325, some courts allow a debtor to budget expenses for the support of a debtor's adult children, parents and grandparents, and grandchildren.  *E.g., In re Smith*, 269 B.R. 686, 689-90 (Bankr. W.D. Mo. 2001) (allowing expenses of 20-year-old daughter living at home and attending college); *In re Wegner*, 91 B.R. 854, 859 (Bankr. D. Minn. 1988) (allowing expenses for adult children and grandchildren).  Other courts have declined to adopt such individuals as "dependents" under the Bankruptcy Code.  *E.g.*, *In re Beharry*, 264 B.R. 398, 404 (Bankr. W.D. Pa. 2001) (disallowing expenses for second wife's minor child); *In re Cox*, 249 B.R. 29, 32 (Bankr. N.D. Fla. 2000) (disallowing expenses for support of mother, fiancé, and fiancé's children).

---

[1] 26 U.S.C. § 152(d)(2)(H) (an individual with the same principal place of abode as the taxpayer qualifies an a "dependent" for purposes of the federal income tax code; 10 U.S.C. § 1072 ("dependent" as defined with respect to members of the U.S. Armed Forces)

In determining whether Ms. Strupe is a "dependent" of the Debtor, the court is guided by the purpose of the term "dependent" in § 1325, which is to recognize and protect a genuine family unit, which may be broader than the traditional nuclear family. *E.g., In re Gonzales*, 297 B.R. 143, 150-152 (Bankr. D.N.M. 2003) (noting that standards set by administrative agencies or industries should not influence courts to ignore "cultural and societal norms").

Here, the Debtor and Ms. Strupe have lived together for over twenty years. At one point, they lived as "one large family" with Ms. Strupe's parents and the respective children of the Debtor and Ms. Strupe. Until becoming ill and unable to work, Ms. Strupe contributed to the Debtor's household expenses. For example, the Debtor testified that during the period when her wages were subject to garnishment by the Internal Revenue Service, Ms. Strupe paid the household bills until the Debtor's garnishment was stopped. Currently, however, Ms. Strupe is unable to work due to extensive surgeries and severe arthritis, and the Debtor supports Ms. Strupe through the payment of Ms. Strupe's medical bills ($375.00 monthly), household expenses ($900.00 monthly for the Debtor and Ms. Strupe), and occasionally fuel ($350.00 monthly, part of which is for Ms. Strupe's automobile). Based on their extensive history together, including the continued support they provide for one another, the court concludes that the Debtor and Ms. Strupe form a "family unit," such that Ms. Strupe is a "dependent" of the Debtor.

Having established the dependency of Ms. Strupe, the court must determine whether the Debtor's expenses listed on Schedule J are reasonably necessary for the support of the Debtor and Ms. Strupe. This determination is left entirely to the court's discretion. *E.g., In re Roedemeier*, 374 B.R. 264, 272-273 (Bankr. D. Kan. 2007) ("[section] 1129(a)(15) must be read to allow a judicial determination of the expenses that are reasonably necessary for the support of the debtor and his or her dependents.").

The expenses that the Debtor incurs to support Ms. Strupe in the form of medical bills ($375.00 monthly), household expenses (jointly totaling $900.00 monthly), and fuel (jointly totaling $350.00 monthly) for Ms. Strupe's car are reasonable and necessary. Ms. Strupe is currently unable to support herself due to her medical conditions. Therefore, it is necessary that the Debtor pay Ms. Strupe's expenses until such time when Ms. Strupe can begin working again. The amounts of the expenses are reasonable, do not appear to be extravagant, and are consistent with the long term living arrangement between Ms. Strupe and the Debtor.

**2. Dogs**

The Debtor currently cares for 15 dogs. She spends approximately $750.00 per month for the care and maintenance of the animals. Spending $750.00 per month on animals that provide no necessary service to the Debtor is unreasonable and unnecessary — the Debtor cares for these dogs only out of a feeling of moral responsibility. The court will therefore disallow this expense from the Debtor's budget.

**3. TV & Telecommunications**

The Debtor subscribes to two television services: Comcast and Direct TV. The Debtor's Comcast package consists of telephone, television, and internet service; Direct TV is also a television service provider. It is unreasonable and unnecessary for the Debtor to maintain two television services. The Court will disallow the $149.00 per month spent on Direct TV service. *See, e.g., In re Gavita*, 177 B.R. 43 (Bankr. W.D. Pa. 1994) (disallowing $100.00 expense for movie rentals when debtors subscribed to cable television plus "The Movie Channel").

Likewise, considering that the Debtor has internet service through her Comcast subscription, it is unnecessary for her to spend $25.90 per month to subscribe to AOL. *See, e.g., id.*

Regarding her $250.00 monthly cellular phone service, the court finds that this expense is too high.[2] A more reasonable amount is $100 per month. *See, e.g., In re Veenhuis*, 143 B.R. 887 (Bankr. D. Minn. 1992) (reducing cell phone service of $40 per month).

In sum, having determined which expenses are not reasonably necessary for the support of the Debtor and Ms. Strupe, an additional $1,074.90 per month is available as disposable income for the benefit of the Debtor's unsecured creditors. Also, the Debtor budgeted $667.95 in monthly vehicle installment payments on Schedule J, which are also listed by the Debtor as being paid in her proposed plan. Because the Debtor already provides for payment of this claim in her Plan, the court will disallow it as a scheduled expense. Therefore, the Debtor's disposable income will be increased by $1,741.90 per month. Using the formula prescribed in § 1325(b)(2),[3] the Debtor's monthly disposable income is $4,867.30. Therefore, the total value of

---

[2] The Debtor testified that a $10.00 charge on her cell phone bill is attributed to her adult daughter being on the plan. The Debtor's adult daughter is gainfully employed and self-reliant. In determining that $100.00 monthly is a reasonable and necessary cell phone expense, the court has also deducted the monthly $10.00 charge attributed to the cell phone given to the Debtor's daughter.

[3] CMI (Form 22B) – Payroll Deductions (Schedule I) – reasonably necessary expenses (Schedule J) = monthly disposable income; $18,830.35 - $8,962.55 - $5,000.51 = $4,867.30.

property to be distributed pursuant to § 1129(a)(15), including installment payments on the Debtor's vehicle, is $292,038.00[4] or payment of 100 percent to the unsecured creditors, whichever is less.

Because the Debtor's current proposal to contribute $4,500 per month is less than the Debtor's disposable income as calculated above,[5] the Debtor has not met her disposable income requirement as prescribed by statute. Thus, the court will sustain Down East's objection.

### A. Dismissal

Down East also seeks to have the Debtor's Chapter 11 case dismissed on the basis that its filing and/or prosecution is in bad faith.

Under § 1112(b), a court may dismiss a case under Chapter 11 if the moving party establishes cause. 11 U.S.C. §1112(b)(1). In deciding whether a case is filed in bad faith, the court may consider any factor that evidences an intent to abuse the protections afforded in bankruptcy. *In re Marshall*, 403 B.R. 668, 689-90 (C.D. Cal. 2009) ("A filing lacks good faith if it is filed in an attempt . . . to achieve objectives outside the legitimate scope of the bankruptcy laws."). In determining whether to dismiss a case for bad faith, the court must consider the totality of the circumstances . . . ." *In the Matter of Madison Hotel Associates*, 749 F.2d 410, 425 (4th Cir. 1984).

Here, considering the totality of the circumstances, there does not appear to be any illegitimate end sought by the Debtor in filing her bankruptcy petition. The court is satisfied that the Debtor did not file her case in an attempt to delay or frustrate creditors. Rather, it appears as though the Debtor filed in good faith to handle substantial tax liabilities which she encountered while paying past creditors, and to shed her liability from two unsold homes that she purchased in her efforts to find better employment opportunities.

### I. CONCLUSION

The court will enter a separate order that sustains Down East's objection to confirmation, and that denies Down East's request to dismiss the case.

---

[4] $4,867.30(60 months) = $292,038.00
[5] $4,867.30 > $4,500.00